B. F. BRITE AND WIFE, LAURA, v. GEORGE PENNY, CAROLINA LOAN AND REALTY COMPANY ET AL.

(Filed 22 November, 1911.)

1. Deeds and Conveyances—Privy Examination—Purchaser—Notice —Fraud—Burden of Proof.

The presence and undue influence of the husband at the ceremony of privy examination would not vitiate a certificate to a deed in all respects regular as against the grantee, unless the grantee had notice of it, and the burden would be upon the plaintiff attacking the validity of the deed for that reason.

2. Deeds and Conveyances — Fraud—Sale of Stock — Mortgages — Misrepresentations—Evidence—Questions for Jury.

Evidence to set aside for fraud a mortgage deed given to ·the defendant by plaintiff to secure money with which to purchase stock the defendant was offering for sale examined and held to be sufficient for submission to the jury.

3. Principal and Agent—Corporations—Officers—Fraud—Corporate Acts—Evidence.

A corporation dealing in stock is fixed with notice of a fraudulent transaction induced by its president, secretary, treasurer, and owner of nearly its whole stock, in which a large profit in the sale of the stock has been realized in the usual business

channels of the company, the stock sold having been listed with the corporation for sale; and the transaction complained of will be deemed, in the absence of evidence to the contrary, to have been done in behalf of the corporation and not of the officer who consummated it in his individual capacity.

APPEAL from *O. H. Allen, J.,* at August Term, 1911, of GUILFORD.

Civil action to set aside and cancel a note and mortgage for $2,000, executed by the *feme* plaintiff on her property to the defendant corporation, tried at August Term, 1911, of the Superior Court of Guilford County, his Honor, *O. H. Allen, J.,* presiding.

These issues were submitted to the jury:

1. Did the defendant George T. Penny by false representations and fraud, as alleged in the complaint, procure the execution of the note and mortgage described in the complaint? Answer: Yes.

2. Did the defendant Carolina Loan and Realty Company, at the time of the execution of the mortgage and the issuance of its check for $2,000, have notice of such fraud?  Answer: Yes.

4. Was the privy examination of Laura Brite to the mortgage described in the complaint taken as required by law, that is, separate and apart from her husband?  Answer: No.

From the judgment rendered the defendant appealed.

*Justice & Broadhurst for plaintiff.*
*King & Kimball and Thomas S. Beall for defendants.*

BROWN, J.  The assignments of error bring up for consideration practically three propositions:

1. The finding upon the fourth issue alone would not be sufficient to uphold the judgment.

The act of the General Assembly, Laws of 1889, ch. 389, Revisal, sec. 956, has been heretofore construed, and it is held that "The presence and undue influence of the husband at the ceremony of privy examination would not vitiate a certificate in all respects regular, unless the grantee had notice of it, and the burden would be upon the plaintiffs to show such notice." *Davis v. Davis,* 146 N. C., 163; *Hall v. Castleberry,* 101 N. C., 155.

In this connection we will say that the concurring opinion
of *Clark, J.,* in *Benedict v. Jones,* 129 N. C., 474, is a clear pre-
sentation of the law and receives our indorsement. In it the
learned judge points out strongly the great danger to the
security of titles which would result if the reasoning of the
Court on that case is carried to its logical conclusion, and well
says: "It was, as is well known, to cure the effect of a decision
of this Court that a privy examination did not have the effect
of a fine and recovery (as had been understood by the profes-
sion) that chapter 389, Laws 1889, was passed."

2. Is there any evidence of fraud? It is not for us to say
that Penny acted fraudulently, but whether there was evidence
enough to justify his Honor in submitting that issue to the jury.

All the evidence was introduced by the plaintiffs and none by
the defendants.

The evidence offered tends to prove that Moser was the
owner of twenty shares of stock of the par value of $100 each
in the High Point Planing Mill Company; that at the time of
the transaction that corporation was insolvent, and it is a legiti-
mate inference that Penny knew it. This stock was placed in
Penny's hands for sale by Moser, who was to receive only $800
of the proceeds and Penny was to receive the remainder. Penny
or his corporation actually received $1,200 for their part.
Penny approached *feme* plaintiff to sell her the stock and to
give him a mortgage on her house and lot. She at first declined,
and afterwards agreed to buy. She told Penny she knew noth-
ing about the stock and relied on him. Penny assured her of
its value, said the corporation owed but little and had an account
due sufficient to pay. He told *feme* plaintiff that he owned
stock in the planing mill and her husband could be secretary
and treasurer at $75 a month, with an increase as the business
grew to $150 a month. The *feme* plaintiff further said: "Mr.
Penny did not tell witness whose stock this was he was selling.
He said Mr. Moser was dishonest and that the firm—the reason
they were standing still then and wasn't working, he said that
they wanted to get Mr. Moser out; he was tricky and dishonest.
Mr. Penny did not state that Mr. Moser was in the business
further than that."

Q. You understood it was Mr. Moser's stock you were buying? A. No, sir.

Q. Whose stock did you understand it was? A. I did not know whose stock it was. He said he had bought out twenty shares, and if witness would take $2,000 stock in it it would give witness and Mr. Penny the controlling interest.

Penny further told plaintiff he had bought Loughlin and Dodamead's stock for himself, and further, that "we would make so much money, 20 per cent on the dollar from the start." Plaintiff further testifies that: "Mr. Penny said, 'Don't you appear to be overanxious about this; if you do, Mr. Moser will back out. I don't think he wants to sell very badly, anyway.' So he looked out of the window and saw Mr. Moser and Mr. Ingold approaching, and he said, 'There comes the boys now.' And when they came in he reached his hand in his pocket and pulled out some stock and said, 'Well, Mr. Moser, I have bought out Mr. Dodamead since I saw you,' and Mr. Moser says, 'You have?' and he says, 'Yes,' and Mr. Moser says, 'You have been hustling since I saw you last.'"

Q. What occurred then? A. On the 17th I said to Mr. Penny, "Is there any indebtedness on this stock?" He said, "Nothing to amount to anything; I have looked over the books and there is a little indebtedness, but there is an outstanding account that will overbalance all the indebtedness on the stock. I will see all that out; don't you have any uneasiness whatever. I will see that is all right; we will be running here in two or three days."

Penny did not offer himself as a witness and deny any of these charges. He did not show that he owned any stock in the planing mill, or that he had purchased Dodamead's or Loughlin's stock. The planing mill never commenced operations again and was very shortly forced into bankruptcy by its numerous creditors.

We will not recite further from the evidence in the record, and comment is unnecessary. That his Honor was justified in submitting the first issue to the jury is manifest from a simple recital of the facts in evidence.

3. Is the Carolina Loan and Realty Company, upon the facts in evidence, bound by Penny's acts?

Upon this phase of the case we were strongly impressed by the forcible argument of counsel for defendant, but a close analysis of the evidence discloses that the principles of law so earnestly contended for by them do not apply.

We recognize the general doctrine held by all courts, that a corporation is not bound by the action or chargeable with the knowledge of its officers or agents in respect to a transaction in which such officer or agent is acting in his own behalf, and does not act in any official or representative capacity for the corporation. *Bank v. Burgwyn,* 110 N. C., 267; *LeDuc v. Moore,* 111 N. C., 516; *Bank v. School Committee,* 118 N. C., 383; *Kennedy v. McKay,* 14 Vroom (N. J.), 288; 39 A. R., 561. But that doctrine cannot be successfully invoked by the realty company under the facts of this case.

His Honor substantially charged the jury upon the third issue that if Penny acted for the corporation *in this transaction* the company would be bound by his conduct, and that the realty company is presumed to know what its agent knew.

This is elementary law and has been invoked repeatedly in the cases of insurance companies whose agents make false representations in selling insurance. *Caldwell v. Insurance Co.,* 140 N. C., 100; *Frazell v. Insurance Co.,* 153 N. C., 60.

What was the "transaction" in this case? It was the sale of the stock for Moser, and in order to carry out that main purpose, and realize a large profit, the loan of the money on mortgage by the realty company was incidentally necessary.

The plaintiff offers part of Penny's examination taken before a commissioner and parts of his answer. Penny states that he is president as well as secretary, treasurer, general manager, and the person who looks after all the affairs of the Carolina Loan and Realty Company, and "that it is true that the sale by said Moser of his twenty shares of stock in the said planing mill company to the plaintiff at the price of $2,000 resulted in a benefit to this defendant of $1,200 in pursuance of an arrangement made with this defendant by the said Moser at the time said stock was listed with this defendant for sale, to the effect that such sum as might be realized upon the sale of said stock within the time limited, whether sale were effected by this

defendant or by the defendant Moser, should belong to this defendant after the said Moser had received net therefor the sum of $800."

It thus appears that Penny was not selling his own stock, but was selling Moser's stock, which had been listed with him for sale at a huge commission. Now, with whom was that stock listed for sale—with Penny individually or his corporation, of which he was practically the "whole thing"?

The corporation was not engaged in a banking business. It loaned money, it is true, and it dealt in real estate, but it also was a dealer in *stocks* and bonds, and when Moser listed his stock for sale through Penny, he listed it with the corporation. It is not to be supposed that Penny, the corporation officer, was acting adversely to the interests of his corporation that employed and paid him and was engaged in selling stocks on his own account, thereby constituting himself a rival in business to his corporation and both occupying the same place of business.

The law would not permit him to act in any such double capacity to appropriate business for himself belonging legitimately to his corporation and to reap the profits of it. Good faith to the stockholders forbade it.

Penny did not advance the money to pay for this stock, but it was the corporation's money, as evidenced by this check:

CAROLINA LOAN AND REALTY COMPANY,   No. 479
REAL ESTATE, LOANS, STOCKS AND BONDS.

HIGH POINT, N. C., May 18, 1909.

Pay to the order of B. F. Brite and Laura Brite 2,000 dollars.            CAROLINA LOAN AND REALTY Co.,
*By* GEORGE T. PENNY, *Sec.-Treas.*

HOME BANKING COMPANY,
HIGH POINT, N. C.                           Mtg. due 5-11-1911.

Stamped on the face of the above check: "Cashed. Home Banking Company. Paid May 18, 1909. High Point, N. C."

Indorsed on the back of the check: "B. F. Brite, Laura Brite."

This check was at once turned over to Moser, and Penny admits he received his share of it.

It is unjust to Penny to suppose that he was using the corporation's funds to make $1,200 for himself in the sale of stocks, when dealing in stocks was a part of the corporate business intrusted to his management. It is a significant fact that in its separate answer in the case the realty company does not allege that Penny was not acting for it.

In any view of the evidence in this case, his Honor would have been warranted in charging the jury as matter of law that the Carolina Loan and Realty Company is bound by Penny's acts in selling Moser's stock to the *feme* plaintiff.

Upon a review of the entire record, we find

No error.