**CROSLAND–CULLEN COMPANY,**
Plaintiff,

v.

**PHILADELPHIA LIFE INSURANCE COMPANY, Defendant.**

Civ. No. 1002.

United States District Court
W. D. North Carolina,
Charlotte Division.

Aug. 25, 1955.

474

W. H. Abernathy, Charlotte, N. C., for plaintiff.

Julius C. Smith, Greensboro, N. C., Henderson & Henderson, Charlotte, N. C., for defendant.

WARLICK, District Judge.

This action was instituted on December 11, 1953, in the Superior Court of Mecklenburg County, North Carolina, and thereafter was removed to this court and docketed with the Clerk on December 31, 1953, under the provisions of section 1441, 28 U.S.C.A. The plaintiff seeks to recover the proceeds of a policy of insurance issued to it as beneficiary by the defendant on the life of David Bailey Crosland, President of the plaintiff company. The case was tried before me without a jury.

In compliance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, as follows:

### Findings of Fact

Plaintiff is a corporation chartered under the laws of North Carolina on December 6, 1946, and is authorized specifically among other things to carry on and transact a general real estate business and to develop property for residential and business purposes, including the erection, construction and repairing of buildings and the purchasing and improving of lands and the sale and rental thereof, with such incidental grants as are necessary to accomplish these and like purposes. It was authorized to do business in any place of its choosing and at the time of the matters and things herein complained of, plaintiff's principal place of business was and had been in Charlotte in the Western District of North Carolina, where all of its incorporators and stockholders lived.

That the defendant is a corporation organized and doing business under the laws of the State of Pennsylvania, having its place of business in the City of Philadelphia and authorized and permitted to do business in the State of North Carolina.

On the third day of January 1947, in line with an application previously made by the plaintiff corporation, to an agent of the defendant in Charlotte, the Philadelphia Life Insurance Company, the defendant, issued its policy No. 153031, insuring the life of David Bailey Crosland, President of the plaintiff corporation, in the sum of $25,000, in consideration of an annual premium of $1,753, with the plaintiff named as beneficiary and set out therein as "Crosland-Cullen Company, Incorporated, an incorporation of the State of North Carolina;" the policy being a twenty year endowment with premiums payable for twenty years and otherwise nonparticipating. Plaintiff corporation was the owner of said policy of insurance and was entitled to the benefits therefrom in the event of the death of David Bailey Crosland, the President, while said policy was in full force. All of the premiums due under said policy to the defendant company during the existence of said policy, up to and including the premium for the year 1953, were paid by plaintiff and from funds belonging to it.

On October 31, 1950, the date of the alleged assignment of said policy of insurance, the outstanding capital stock of the plaintiff corporation was owned and held, as shown by the stock books of said corporation, as follows:

David Bailey Crosland, President
———31 shares
Matilda H. Crosland, Secretary
———28 shares
Charles H. Cullen, Treasurer
———1 share

David Bailey Crosland being the husband of Matilda H. Crosland and the stepfather of Charles H. Cullen, who was the son of Matilda H. Crosland by a former marriage. These three named individuals constituted all of the stockholders of the plaintiff corporation and were its sole officers and also made up the Board of Directors of the plaintiff. They had occupied the same positions with respect to said corporation since shortly after its organization in 1946.

On February 16, 1949, plaintiff borrowed from defendant the sum of $1,795 under the policy's loan agreement of the defendant with the evidence of debt being executed by David Bailey Crosland as President and Matilda H. Crosland as Secretary, and attested by the corporate seal.

For some time prior to the 31st of October, 1950, David B. Crosland and his wife, Matilda H. Crosland, President and Secretary respectively of the plaintiff had apparently not been doing too well in their marital relationship,—it apparently was cracking up,—she having been married previously and being Crosland's third wife, and in line with an effort to adjust their marital difficulties, the two as husband and wife entered into a separation agreement, undertaking to effect a complete understanding and make a disposition of the properties held by them jointly as well as individually, and among the things done as is shown on page 9 of the 14 page separation agreement, David B. Crosland undertook to transfer and assign to her the insurance policy heretofore issued by the defendant to the plaintiff on his life. This being done in the following words:

"The said David Bailey Crosland hereby stipulates, covenants and agrees with the said Mrs. Matilda Hart Crosland that his life has been insured by the Philadelphia Life Insurance Company for $25,000.00, and said David B. Crosland further stipulates, covenants and agrees with the said Party of the Second Part that $15,000.00 of said life insurance is hereby assigned by him to said Mrs. Matilda Hart Crosland as a protection for said Party of the Second Part, and said Party of the Second Part is hereby authorized,

empowered and directed to hold the said life insurance policy until said Party of the First Part has fulfilled all of the terms and conditions of this Deed of Separation. The said David Bailey Crosland further stipulates and agrees that in the event he should die before he has fulfilled all the terms and conditions of this Deed of Separation, then and in that event, the said Philadelphia Life Insurance Company is hereby authorized, directed and ordered to pay said $15,000.00 insurance to Mrs. Matilda Hart Crosland. The said Party of the First Part further stipulates, covenants and agrees with the Party of the Second Part that he will keep up and pay all premiums which shall become due on said life insurance policy during the period while said policy is held under an assignment to said Mrs. Matilda Hart Crosland."

On said 31st day of October, 1950, David Bailey Crosland, President of plaintiff corporation, and Matilda H. Crosland, Secretary, executed an assignment of said policy of insurance No. 153031, in the name of the plaintiff corporation to the said "Matilda H. Crosland, 2917 Forest Park Drive, Charlotte, North Carolina, her successors or assigns," to the extent of $15,000 and affixed the corporate seal of plaintiff. David Bailey Crosland, President, thereupon made a corporate acknowledgement before a Notary Public of said purported assignment, all as appears from the original of said assignment offered in evidence as defendant's Exhibit No. 1. Said assignment was forwarded to and received by the defendant life insurance company and the following entry thereon was executed: "The Philadelphia Life Insurance Company, in accordance with its rules, has retained a copy of this assignment. The company assumes no responsibility for the sufficiency or validity of assignment." Philadelphia. January 5, 1951. (signed) John L. Milne, Vice President."

The minutes of plaintiff corporation contained no record of this assignment and there is no authority appearing therein authorizing such assignment. The evidence in the case further indicates that there was no meeting of the stockholders, or of the Directors, indicating any authorization by the corporation for the acts and deeds done herein. No consideration whatsoever passed to the plaintiff for the purported assignment of the $15,000 interest in said policy of insurance.

That on June 30, 1950, at the end of the plaintiff's fiscal year next preceding the assignment, the liabilities of plaintiff exceeded its assets by $12,712.67, and said indebtedness increased and was in a greater amount at the time of the purported assignment of said policy of insurance on October 31, 1950, and worsened progressively down to and including the date of the death of David Bailey Crosland, at which time the true picture reflected assets much less than the liabilities. That this purported assignment was not authorized, expressly or impliedly, by the charter of plaintiff corporation, nor by the laws of North Carolina. The assignment was wholly and solely for the use and benefit of David Bailey Crosland, individually, and his wife, Matilda H. Crosland, personally.

That following the execution of the deed of separation and the execution and delivery of the assignment of said policy of insurance, the marital relationship existing between David Bailey Crosland and his wife, Matilda H. Crosland was dissolved by the granting of an absolute divorce in a court of competent jurisdiction, and subsequently, on June 23, 1951, David Bailey Crosland married and invested himself with a fourth wife, whom he had known since 1949.

That on the 19th of May 1953, David B. Crosland died from the effects of self inflicted wounds and that said insurance policy was in full force and effect at the time of his death,—all premiums having been paid as provided by the policy

and from funds belonging to the plaintiff herein.

Pauline Holmes Crosland, at the annual stockholders meeting in 1952 was elected Secretary of the corporation and as such officer had custody of the books and records of the plaintiff. She was wholly unaware of the previous assignment of said policy of insurance. The records being silent on this score.

On May 26, 1953, Mrs. Pauline Crosland, under the terms of the last will of David Bailey Crosland, qualified as executrix and made request of defendant for a form for proof of death. It was then learned for the first time that an assignment of the policy herein owned by plaintiff had been made and that form for proof of death had heretofore been forwarded to Matilda H. Crosland.

Shortly thereafter plaintiff employed John James, Esq., an attorney of Charlotte, who after making an investigation and fully acquainting himself with the facts involved, sent a message by Western Union, placing the defendant on notice about the policy and acquainting it with the claimed invalidity of the assignment and made demand for payment in full to the plaintiff herein, the named beneficiary. This was done on June 9, 1953, and thereafter through correspondence fully made known to the defendant the position of the plaintiff, its financial standing and its apparent insolvency.

It is rather singular to me that defendant, receiving the general release form provided by it and executed by Matilda H. Crosland, alleged assignee, on June 9, 1953, did not issue its check to the said Matilda H. Crosland in the sum of $15,000 until June 22, 1953, obviously after all information had been given it, and then in final answer to the telegram of June 9, and the number of letters passing between plaintiff's attorney, Mr. James, and the defendant company, wrote on June 24, among other things, that "We are bound to recognize the assignment and that the grounds that you have asserted in support of your contentions are insufficient," and thereupon presumably forwarded its check to Matilda H. Crosland, which was on its presentation duly paid in full.

Why this course was followed after the issue had been raised and the controverted facts known and full knowledge thereof had by the defendant is rather difficult to determine, particularly when a payment into court by it would have solved defendant's position as stakeholder.

Thereafter it would appear that the defendant forwarded to plaintiff its check in the sum of $7,360.45 in full payment of the amount due under the policy of insurance dated June 5, 1953, which was received by the plaintiff in due course, but never cashed, and which is now held to plaintiff's demand by the City Savings Bank in Charlotte, North Carolina. Notice being duly given by plaintiff that such check would not be accepted as tendered and that it was refused and that unless payment in full was made that action to recover would be instituted.

This check was endorsed in pencil and is now held as collateral security on a note due by plaintiff to said bank on matters arising from efforts to conduct the affairs of plaintiff.

The original answer of the defendant relied wholly on the assignment and its validity. During the trial, on motion of defendant, on certain facts being made to appear, an amendment was allowed defendant to set up an estoppel arising from the receipt and retention and handling of the check payable to plaintiff in the amount above as full settlement.

### Conclusions of Law

This action is to be determined under the laws of North Carolina and the rights of the parties accordingly adjusted. The principal question is—"Was the act of David Bailey Crosland, President, and his wife, Matilda, Secretary, officers of plaintiff corporation, in executing the contract of assignment without consideration to plaintiff and thereby depleting its assets, *ultra vires,* as contended by plaintiff?" I conclude unhesitatingly that it was, and being so is void and of no effect.

478

For a contract executed by the officers of a corporation to be binding on the corporation it must appear that —(1) It was incidental to the business of the corporation; or (2) It was expressly authorized; (3) It was properly executed.

The charter of the plaintiff did not vest such officers expressly with such authority. And no implied authorization for that purpose is in any wise made to appear. It clearly was a personal transaction for the individual gain of the two officers involved. The act of the two undertook to dispose of property owned by plaintiff and held for the use and benefit of its creditors and stockholders without any process of law. From it the corporation received no benefit.

"A corporation is an artificial being, created by the State, for the attainment of certain defined purposes, and, therefore, vested with certain specific powers and others fairly and reasonably to be inferred or implied from the express powers and the object of the creation. Acts falling without that boundary are unwarranted—*ultra vires.*" 7 R.C.L. 673; 19 C.J.S., Corporations, § 1286, p. 965.

"A corporation, being the mere creation of the law, possesses only those properties which the charter of its creation either expressly or as incidental to its creation confers." Marshall, C. J., in Dartmouth College Case, Trustees of Dartmouth College v. Woodward, 4 Wheaton 518, 4 L.Ed. 629.

The general rule is that no corporation has the power, by any form of contract or endorsement, to become a guarantor or surety or otherwise lend its credit to another person or corporation. 19 C.J.S., Corporations, § 1230, p. 917, and numerous authorities cited in note 14; 7 Fletcher on Corps., 647; 7 R.C.L. 675.

In the absence of express statutory authorization, a corporation has no implied power to lend its credit to another by issuing or endorsing bills or notes for his accommodation, where the transaction is not related to the business activity authorized by its charter as a necessary or usual incident thereto. 14 A.C.J. 732, sec. 2781; 19 C.J.S., Corporations, § 1228, p. 915.

A corporation is without implied power to guarantee for accommodation the contract of its customers with third persons on the ground that it may thus stimulate its own business. Such use of its credit is clearly beyond the power of an ordinary business corporation. Bowman Lumber Co. v. Pierson, 110 Tex. 543, 221 S.W. 930, 11 A.L.R. 547; Northside R. Co. v. Worthington, 88 Tex. 562, 30 S.W. 1055, 53 Am.St. Rep. 778. It has no authority to use its credit for the benefit of a stockholder or officer. Hunter v. Garanflo, 246 Mo. 131, 151 S.W. 741; First Savings & Trust Co. v. Romadka, 7 Cir., 216 F. 113, 132 C.C.A. 357; Brinson v. Mill Supply Co., 219 N.C. 505, 14 S.E. 2d 509.

The defendant contends in its brief that the plaintiff is estopped in two respects: (1) That the two principal stockholders of plaintiff executed the assignment as such officers and that the other stockholder discussed the assignment and consented thereto. (2) The check for $7,360.45 was mailed to plaintiff by defendant and has been retained since that time, and by endorsement has been placed beyond its control.

I agree with neither of these positions and hold that plaintiff is not estopped by its actions to enforce its rights and recover as against the defendant.

Defendant relies on the doctrine set out in Kerr v. Sanders, 122 N.C. 635, 29 S.E. 943, and other cases of like import. Moore v. Greene, 237 N.C. 614, 75 S.E. 2d 649. The facts in that case and others of similar meaning are vastly different from the facts disclosed here. When the check was forwarded defendant was fully aware of plaintiff's contentions and had knowledge of all the factors involved. It was informed that the check could not be received in full settlement but that on the other hand plaintiff would insist on payment as beneficiary in line with the terms and condi-

tions of the policy of insurance, and was consequently aware that the check would not be accepted.

The doctrine of estoppel by conduct—estoppel *in pais*—rests upon the principles of equity. It is designed to aid the law in the administration of justice when without its aid injustice would result. Therefore, in determining whether the doctrine of estoppel applies in any given situation the conduct of both parties must be weighed in the balance of equity and the party claiming the estoppel no less than the party sought to be estopped must conform to fixed standards of equity. North Carolina Self Help Corp. v. Brinkley, 215 N.C. 615, 2 S.E.2d 889; American Exchange Nat. Bank v. Winder, 198 N.C. 18, 150 S.E. 489; Boddie v. Bond, 154 N.C. 359, 70 S.E. 824; 19 Am.Jur., Estoppel, Sections 42 and 46.

I conclude therefore that plaintiff is entitled to have and recover of the defendant the face value of said policy of insurance, less the loan admittedly outstanding against it, all as will be computed from available records.

Counsel will submit decree carrying into effect these conclusions.