SLEDGE LUMBER CORPORATION v.
SOUTHERN BUILDERS EQUIPMENT COMPANY, INCORPORATED.

(Filed 15 June 1962.)

1. **Usury § 1— Evidence held insufficient to be submitted to jury on question of usury.**

   Evidence that plaintiff corporation loaned money to defendant corporation evidenced by a note bearing five per cent interest, that at the same time the president, acting manager and major stockholder of plaintiff corporation gave his personal check for the purchase of a chattel from defendant corporation for a grossly inadequate price and gave defendant corporation an option to repurchase the chattel within a year at more than twice the sales price, without evidence that the sale-option was made a *condition* for the loan or that plaintiff corporation received any benefit therefrom, *is held* insufficient to support defendant corporation's counterclaim for usury in plaintiff corporation's action on the note.

2. **Corporations § 6—**

   While ordinarily the knowledge of the officers and agents of a corporation in connection with the corporate business will be imputed to the corporation, this rule does not apply when such officer or agent receives the knowledge while acting in his own behalf or for his personal gain, and not in any official or representative capacity for the corporation.

APPEAL by defendant from *McKinnon, J.,* October 1961 Term of CUMBERLAND.

This is an action to recover the sum of $15,579.34, the balance alleged to be due on a promissory note, and to foreclose the chattel mortgage securing it. In its complaint the plaintiff alleges that on January 26, 1959, for money borrowed, the defendant executed and delivered to the plaintiff a note for $42,000.00 payable in fourteen installments with interest at five per cent per annum; that after paying $28,550.00, the defendant defaulted. The defendant in its answer admits the execution of the note and payments amounting to $28,550.00 but alleges as a further defense and counterclaim that W. F. Sledge is the principal stockholder and sole owner of the plaintiff corporation; that Sledge, acting as agent for and on behalf of plaintiff, negotiated the loan and, as a part of the inducement for making it, required defendant at the time of executing the note to execute to Sledge a bill of sale for a 15-B Erie Crawler Crane worth over $12,000.00; that the actual consideration for the bill of sale was $3,500.00 and, at the time of paying it, Sledge executed an option giving defendant the right to repurchase the crane at any time within one year for $8,500.00; and that the crane was left in the possession of the defendant. Defendant further alleges that the purpose of the sale-option agreement was to exact usury in the sum of $5,000.00; that plaintiff thereby forfeited all right to interest; and that defendant is entitled to have the payments it has made to plaintiff applied in reduction of the principal of the loan. Defendant offered to pay plaintiff $13,450.00 which it contended would be the balance due. In its reply plaintiff denied the charge of usury and alleged that it had been renting the crane to the defendant for a stipulated monthly rental. In a FURTHER REPLY plaintiff alleged as a plea in bar that there is presently pending in the Superior Court of Cumberland County an action by W. F. Sledge, plaintiff, against this defendant which involves the bill of sale and option to repurchase the crane and that that action "presents the exact question which this defendant attempts to present in this action, and to allow the defendant to maintain the counterclaim in this action would be to allow it twice to realize its remedy for usury recognized by the statutes of the State of North Carolina."

On the trial plaintiff offered evidence which tended to show the following facts:

In January 1959, W. F. Sledge was the president and acting manager of plaintiff corporation. He owned 582 of its 820 outstanding shares of stock; his wife owned 210 shares; his brothers and sisters owned the balance. Consummating negotiations which he began in November, 1958 with defendant's manager, Joe Stout, on January 26, 1959 plain-

tiff made a loan to the defendant in the amount of $42,000.00, secured by a chattel mortgage payable in specified installments and bearing interest at five per cent. On the same day, for $3,500.00 Sledge purchased from the defendant, for himself individually, a 15-B Erie Crawler Crane and at the same time gave defendant an option to repurchase it for $8,500.00 at any time prior to January 26, 1960. On January 21, 1959 Sledge wrote Mr. J. O. Tally, Jr., an attorney of Fayetteville, North Carolina, enclosing his personal check for $3,500.00 and the plaintiff's check for $36,000.00, advising him that the checks were to be used to pay all outstanding indebtedness on the equipment covered in the chattel mortgage and instructing him how to prepare the note and bill of sale. On February 2, 1959 Sledge transmitted "certain papers" to the attorney and, on the letterhead of the plaintiff, wrote him that the bill of sale should be made to Sledge personally and not to the plaintiff. The crane described in the bill of sale was left in the possession of the defendant from January 1959 until the spring of 1960 without any agreement on the part of the defendant to pay rent for it. Sledge testified that he got no rent for it until July 1st, but that before he took claim and delivery for the crane in 1960 defendant agreed in April to pay monthly a rental for it.

Defendant offered evidence which tended to show that in January 1959 Joe Stout was the general manager of the defendant, but during June C. E. Bruns became the general manager; that the 15-B Erie Crawler Crane which was the subject of the bill of sale to Sledge on January 26, 1959 was then worth $12,000.00; that defendant still has the crane and has never paid any rent for it; that sometime after June 1st, 1959, Sledge told Bruns he wanted payments to begin on the crane, and from September 1959 to January 1960 payments totaling $2,698.76 were made on it. Defendant offered in evidence the allegation in plaintiff's FURTHER REPLY with reference to the action pending in Cumberland County between W. F. Sledge and the defendant.

At the close of all the evidence plaintiff's motion to dismiss defendant's counterclaim was allowed. The parties agreed that without the forfeiture of interest alleged in the counterclaim the balance of principal and interest due on the note was $16,875.51. The Court entered judgment for this amount. The defendant appealed assigning as errors the dismissal of its claim for a forfeiture of interest and the entry of judgment in accordance with that ruling.

*Tally, Tally, Taylor & Strickland and Jesse M. Henley, Jr., for plaintiff appellee.*
*Robert B. Morgan and Lake, Boyce & Lake for defendant appellant.*

SHARP, J. By disallowing defendant's claim that plaintiff had forfeited all right to collect interest on the note which is the subject of this action and by entering judgment for the balance of the principal due with interest at five per cent after crediting defendant with all payments, the trial judge held that the defendant had offered no evidence tending to show that plaintiff had reserved or charged a greater rate of interest than six per cent for the use of the $42,000.00 lent defendant. The correctness of this ruling is the question presented by this appeal. The answer to it depends upon whether or not the evidence will justify an inference that the president of the plaintiff corporation, W. F. Sledge, made the sale-option transaction involving the 15-B Erie Crawler Crane a condition precedent for the loan.

If Sledge were the payee in the note and the plaintiff in this action, the ruling on the motion to dismiss the claim for forfeiture of interest would clearly have been error. The circumstances surrounding the execution and delivery of the bill of sale and the option to repurchase the crane and the retention of the crane thereafter by the defendant for more than a year without any agreement for rent would raise a question of fact to be determined by the jury as to whether that transaction were in fact a *bona fide* sale or a disguised loan made with the corrupt intent to evade the statute against usury. A contract of this kind is frequently a cloak to cover up a scheme to collect usurious interest. However, whether it is such a device depends upon the real intent of the parties which is a question of fact to be determined by the jury from all the circumstances of the particular case. 55 Am. Jur., Usury, Sections 24, 30. Anno., 154 A.L.R. 1063. A profit, even if excessive, is not usury unless it is a mere device to cover and conceal a usurious transaction. *Yarborough v. Hughes,* 139 N.C. 199, 51 S.E. 904.

There is no suggestion, either in the pleadings or the evidence, that the $42,000.00 note considered alone, is tainted with usury. The interest charged was only five per cent and the $36,000.00 check which closed the loan was apparently the unpaid balance due the defendant at that time. Therefore, if the crane sale-option deal was, in fact, unrelated to the loan and a separate transaction between Sledge and the defendant, the nonsuit would clearly be proper.

The defendant in its answer alleges that plaintiff is "a corporation wholly owned by W. F. Sledge" . . . that W. F. Sledge "is the sole owner of the stock in the corporation" . . . that W. F. Sledge "acting as agent, servant, and employee for and on behalf of the said Sledge Lumber Corporation, negotiated the $42,000.00 loan but that "acting as agent, servant and employee of the said plaintiff, Sledge Lumber Corporation, simultaneously therewith required the defendant corporation as a part of the inducement to make said loan, to execute a bill

of sale . . . wherein . . . a 15-B Erie Crawler Crane was conveyed to the said W. F. Sledge, the said W. F. Sledge being the principal and majority stockholder in the plaintiff corporation, and at the said time acting as agent, servant, and employee of said corporation, and did receive the said bill of sale while acting in said capacity, . . ."

No evidence supports the defendant's allegation that Sledge was the sole owner of the plaintiff corporation; others owned 238 shares. The theory of the counterclaim is not that Sledge is the alter ego of plaintiff or that plaintiff is a one-man dominated corporation, and the ends of Justice require that the corporate entity be disregarded so that Sledge is revealed as the real party in interest. *Terrace, Inc. v. Indemnity Co.*, 243 N.C. 595, 91 S.E. 2d 584. The repeated allegations are that Sledge, acting as the agent of the plaintiff, required the defendant, as a condition for the loan, to execute to him personally a bill of sale for the crane for the grossly inadequate price of $3500.00, taking back an option to repurchase for $8,500.00.

Sledge was the president and acting manager of the plaintiff corporation. He handled the loan with defendant. His position as chief executive officer of the corporation was such that his acts and knowledge would be the acts and knowledge of the corporation which can act only through its agents. If, as a condition for the corporation's loan and as a cloak for usury, Sledge required defendant to sell the crane to him individually for a grossly inadequate price giving back to the defendant an option to repurchase at more than twice the sales price, then the corporation would be held responsible for his acts. *Williams v. Rich*, 117 N.C. 235, 23 S.E. 257; Annotations, 7 A.L.R. 139; 52 A.L.R. 2d 747, 748; 105 A.L.R. 807. However, unless Sledge made the sale of the crane to himself one of the conditions for the loan from the corporation, the corporation's loan could not be tainted with usury because of the personal dealings between its president and the defendant on an unrelated transaction however usurious the latter transaction might have been. It is the general doctrine "that a corporation is not bound by the action or chargeable with the knowledge of its officers or agents in respect to a transaction in which such officer or agent is acting in his own behalf, and does not act in any official or representative capacity for the corporation." *Brite v. Penny et al*, 157 N.C. 110, 72 S.E. 964; *Brinson v. Supply Co.*, 219 N.C. 505, 14 S.E. 2d 509.

As we have said, the evidence on this record would sustain a finding that Sledge himself intended to collect usury by means of the crane transaction, but there is no evidence to support defendant's allegation that he made the sale of the crane, for which he gave his personal check, a condition for the loan. The negotiations for the loan were conducted by Sledge and Joe Stout who was then defendant's general

manager. Stout is no longer general manager, but he is a second vice-president of the defendant corporation. Nevertheless, he did not testify at the trial of this action. The evidence does not disclose any acceptance of benefits from the crane deal by the plaintiff. The evidence is that all payments on the crane were made to Sledge himself. There is no evidence as to when the negotiations between Sledge and defendant began with reference to the crane deal. The record is silent as to any connection between the loan and the crane transaction except that they were both closed at the same time by the same attorney and that the proceeds of both were used to pay off prior debts of the defendant. We do not think that this was sufficient to sustain a finding that the sale was a condition for the loan.

In any event, it appears that no injury can come to the defendant by treating the note and the crane deal as separate transactions. In the instant case judgment has been entered on the note for the balance which defendant agreed was due. According to the allegation in plaintiff's reply, introduced in evidence by the defendant prior to the institution of this action by the plaintiff corporation, Sledge individually had commenced an action for the possession of the crane, and in that action defendant has properly raised the question of usury which it sought to raise here. Defendant, therefore, still has the right and opportunity to have a jury find the true nature of the crane transaction.

For the reasons stated the ruling of the trial judge is
Affirmed.