S. L. MORRIS v. J. S. BASNIGHT, THE NEW BERN LUMBER COMPANY, ET AL.

(Filed 10 March, 1920.)

1. **Principal and Agent—Corporations—Officers—Scope of Authority.**

    A contract to convey land executed by the general manager of a corporation and apparently within the scope of his powers and in the line of the company's business, is *prima facie* binding on the company.

2. **Same—Benefits Accepted—Ratification.**

    A corporation which has acquired the timber on the owner's land under an agreement made by him with its secretary and general manager to reconvey the land to him for a certain consideration, having knowingly accepted the benefit thereof may not repudiate the authority of its officer, thus acting as its agent, and disaffirm the transaction.

3. **Contracts to Convey—Divisible Contracts—Equity—Specific Performance— Consideration— Fraud—Corporations—Officers—Principal and Agent.**

    *Semble,* where a corporation is bound by a transaction made by its proper officer with a tenant in common, to purchase the timber growing on the lands at an administrator's sale, to make assets, that it would reconvey a defined portion thereof to the tenant in common, at an agreed price, the mere fact that a third person became a purchaser with the corporation, does not affect the owner's rights, when it is made to appear that the lands were paid for with the corporation's money, was bought in by its officer in fraud of the owner's rights, who thereupon executed a quit claim deed to his company for a nominal consideration: and *Held,* the contract being a devisable one, performance may be insisted upon by the tenant, he being ready and willing to perform the full obligations of the contract resting on him.

4. **Contracts—Specific Performance—Vendor and Purchaser—Title—Bona Fide Purchaser—Equity—Deeds and Conveyances.**

    While equity will not decree specific performance of a contract to convey land when the defendant no longer has any title to convey, the

principle only applies when it is clearly established that the title has been passed to a *bona fide* purchaser, free from any and all equities arising to the plaintiff by reason of his claim and the suit brought to enforce it.

**5. Lis Pendens—Pleadings—Corporations—Officers—Principal and Agent —Actual Notice.**

Where the president of a corporation, the substantial owner of its shares of stock, has personally bought in the lands which the company is under a binding contract to convey, before suit brought to enforce the contract, and with full knowledge of the plaintiff's rights, taken deed for same from his company, before complaint filed, he and his corporation are concluded from setting up the doctrine of *lis pendens* as a defense, and his purchase will be held ineffective and fraudulent as to the decree rendered and the rights established in the plaintiff's favor, for specific performance.

**6. Same—Statutes—Constructive Notice.**

The doctrine of *lis pendens*, as it ordinarily prevails, only affects third persons who may take title to lands after the nature of the claim and the property affected are pointed out with reasonable precision by complaint filed or by notice given, pursuant to statutory regulations, Rev. sec. 462, which relates to constructive notice and its effect on subsequent purchasers, but the principle is not operative where one buys from a litigant with full notice or knowledge of the suit, its nature and purpose and the specific property to be affected.

CIVIL ACTION, tried before *Kerr, J.,* and a jury, at September Term, 1919, of CRAVEN.

The action was to enforce performance of a written contract to convey land, the same being in terms as follows: 

"We, the undersigned, New Bern L. Company, hereby promise and agree with S. L. Morris that in the event we should bid off at the Adams sale the W. B. Morris (deceased) lands, and become the sole owners of same according to the terms of such sale, that we will sell or cause to be sold to the said S. L. Morris, for the sum of $100, the tract of land where he now resides, the same lands intended for him by his late father, W. B. Morris, containing about 14 acres, more or less.

"In witness whereof, we hereunto set our hands and seals, this 22 November, 1904.  - NEW BERN LUMBER Co.  (Seal.)
By J. S. Basnight, Secretary."

The facts in evidence chiefly relevant to the controversy appear to be as follows:

On or about 21 November, 1904, the plaintiff, Southy L. Morris, was living on the small tract of land now in controversy, and which his father had laid off for him, and on which he had been living about 38 years. Plaintiff was tenant in common with his brothers and sisters in the lands of their father, W. B. Morris, deceased, which the adminis-

trator had begun a proceeding to sell. The defendant, New Bern Lumber Company, was anxious to buy the lands on account of the timber growing thereon, and J. S. Basnight, director, secretary, and general manager of said New Bern Lumber Company, and George Anderson, its superintendent of lands, were seeking to buy the interests of the several heirs before the administrator's sale. The secretary and general manager of the New Bern Lumber Company testified that Southy L. Morris, at and before the execution of the deed for his interest, required said secretary and general manager to give him the contract by which the New Bern Lumber Company agreed to reconvey to ·Southy L. Morris for the sum of $100 the 14 acres of land on which he was then living.

The administrator conveyed the Morris lands to Herbert C. Turner and W. B. Blades, 22 March, 1905, and Herbert C. Turner, president of the New Bern Lumber Company, paid the purchase money. The company was then owned by H. C. Turner, J. S. Basnight, and D. W. Basnight. On 5 April, 1905, J. S. and D. W. Basnight sold their stock in said company, and at the meeting of the stockholders on 4 April, 1905, J. S. Basnight resigned as director, secretary, and general manager, and D. W. Basnight resigned as director and vice president; H. C. Turner resigned as president, and was elected vice president, and Charles H. Turner was elected director and president of said company.

Some time after 5 April, 1905, H. A. Marshall, surveyor, was employed by the New Bern Lumber Company to survey the land which it had agreed to reconvey to plaintiff Morris, and sent George Anderson, its agent who looked after its lands, to show the surveyor the little piece which was to be cut off for Morris, so it could make a deed to Morris, and the company paid the surveyor for doing the work.

The surveyor made the survey, marked the land off (p. 25), and sent the description of the land to the company and to the plaintiff.

The plaintiff tried to get his deed. He went to Basnight and to Anderson and told them he had his $100 ready to pay for it. Basnight told him not to be in a hurry.. Finally, Basnight told him to go to George Anderson; that Basnight and the company were at outs, and not to come to him any more.

The plaintiff continued in possession of his little piece of land after it was surveyed, and marked off for him ·by the defendant company's surveyor, built stables, outhouses, kept up the fences, and paid the taxes. Neither the New Bern Lumber Company nor Mr. Turner ever demanded rent or possession of the land.

25 October, 1908, Charles H. Turner, Mabel S. Turner, his wife, and Herbert C. Turner, his brother, owned the New Bern Lumber Company, and they continued to own all the stock until 1 February, 1913, when

Charles H. Turner was president, his son, R. G. Turner, was vice president, and C. H. Hall, an employee, was secretary.

27 April, 1912, Herbert C. Turner, for $10, executed a quit-claim deed to the New Bern Lumber Company for all of his right, title, and interest in the Morris lands.

The summons in this action was issued 4 November, 1913; served 6 November, 1913, and on 28 November, 1913, the New Bern Lumber Company, by deed executed by Charles H. Turner, president, purported to convey to Charles H. Turner all of its real and personal property of whatever kind, consisting in part of the lands, timber rights, and privileges, conveyed to said company by 28 deeds, conveyances, and contracts, from various and sundry grantors, including the quit-claim deed of Herbert C. Turner for his interest in the Morris lands. At the time of making this deed to himself, Charles H. Turner was president, his son, R. G. Turner, vice president, and C. H. Hall, employee, were the only stockholders in said company. Said R. G. Turner thinks he had one share of stock, and doesn't know how much Hall had then, but he hasn't any now.

The complaint was filed on 3 February, 1914, as of November Term, 1913.

The company has never been dissolved, and Charles H. Turner is now president and sole owner.

On issues raised by the pleadings, the jury rendered the following verdict:

"1. Did the New Bern Lumber Company, by its authorized agent, J. S. Basnight, contract and agree to convey the lands described in the complaint to the plaintiff, S. D. Morris? Answer: 'Yes.'

"2. Did H. C. Turner purchase this land for the New Bern Lumber Company, and take title to himself in fraud of plaintiff's rights? Answer: 'Yes.'

"3. Did the New Bern Lumber Company convey this land to C. H. Turner in good faith and for value? Answer: 'No.'

"4. Did the plaintiff demand a deed for said land, and offer to comply with the contract to convey the same to him? Answer: 'Yes.'"

Judgment on the verdict for plaintiff against defendant, the New Bern Lumber Company, and said defendant, having duly excepted, appealed.

*E. M. Green, R. E. Whitehurst, and R. A. Nunn for plaintiff.*
*Guion & Guion and Moore & Dunn for defendant.*

HOKE, J. The contract to convey is sufficient in form, and, having been executed by the general manager of the company, apparently within the course and scope of his powers, and in the line of the com-

pany's business, is *prima facie* binding on the company. *Bank v. Oil Mill,* 157 N. C., 302; *Clowe v. Imperial Pine Product Co.,* 114 N. C., 304. And, if it were otherwise, the company having acquired the plaintiff's interest in his father's land and the timber thereon under and by virtue of the act of the secretary and general manager, are concluded on this question. They will not be allowed to accept and hold the benefits of the agreement and repudiate the authority of the agent by whom it was made. *McCracken v. R. R.,* 168 N. C., 62-67; *Sprunt v. May,* 156 N. C., 388; *Watson, Trustee, v. Mfg. Co.,* 147 N. C., 469; 10 Cyc., 1073.

The objection of defendant, therefore, that no proper authority had been shown for making the contract, must be disallowed.

Recovery is resisted further by defendant on the ground that W. B. Blades, a third person and not a party, is the owner of one-half interest in the property. It is true the facts show that, at the time the property was acquired in pursuance of the agreement, said Blades joined Herbert C. Turner in the transaction, and that the deed was made to the two, but it also appears that the entire purchase price was paid by Turner, then president of the company, and evidently with the company's funds. Not only is it found by the verdict that said Turner bought the land and took title to himself in fraud of plaintiff's rights, but in recognition of the company's interest prior to the institution of the suit, and for a nominal consideration of $10, he executed a quit-claim deed, conveying to the company all his right, title and interest in the property. From these facts, therefore, it would seem that W. B. Blades has no such interest in the property as would prevent a conveyance of the entire title by a deed of defendant company. *Kuhn v. Epstein et al.,* 219 Ill., 154. Without decision on this question, however, it is the recognized principle in actions of this character that, in a divisible contract of the kind presented here, partial performance may be insisted on by the vendee, and assuredly so when it is made to appear that he is ready and willing to perform the full obligations of the contract on his own part. *Timber Co. v. Wilson,* 151 N. C., 154-157; *Kones v. Corell,* 180 Mass., 206; 25 R. C. L., Title, Specific Performance, sec. 51.

Again, it is contended that specific performance may not be awarded in the present instance because it appears that the defendant company has conveyed its entire interest to C. H. Turner, and is no longer able to convey any part of the title to the property. It is undoubtedly a correct position that equity will not do a vain thing and decree the making of a title when the defendant has no longer any title to convey, but the principle only applies when it is clearly established that the title has been passed to a *bona fide* purchaser, free from any and all equities arising to the plaintiff by reason of his claim, and the suit brought by

him to enforce it and is not available to defendant on the facts of this record. Not only is Charles H. Turner the president and substantial owner of the company and its assets, and presumably cognizant of plaintiff's rights under his contract, but he bought, pending this suit brought by plaintiff to enforce these rights. True he purchased and took his deed before complaint filed, and the doctrine of *lis pendens* as it ordinarily prevails only effects third persons who may take title after the nature of the claim and the property affected are pointed out with reasonable precision by complaint filed or notice given pursuant to the statutory regulations, but this limitation only prevails as it may affect the purchaser with *constructive* notice. Our statute on the subject, Rev., 462, only purports to deal with constructive notice, and its effect on subsequent purchasers, but where one buys from a litigant with full notice or knowledge of the suit, and of its nature and purpose, and the specific property to be affected, he is concluded or his purchase will be held ineffective and fraudulent as to decree rendered in the cause and the rights thereby established. *Griswold v. Muller,* 15 Barbour, 520; *Corwin v. Bensley,* 43 Cal., 253-262; *Wick v. Dawson,* 48 West Va., 469-475; 25 Cyc., 1452; Bennett on Lis Pendens, 319.

One careful consideration, we find no reason for interfering with the disposition made of the case, and the judgment in plaintiff's favor is

Affirmed.