PHYLLIS H. SNYDER v. GEORGE K. FREEMAN, JR.; DOUGLAS L. CROOM; JOHN COLUCCI, JR.; JOHN COLUCCI III; WOODROW PRIDGEN; AERONAUTICS, INC.; AND PAUL DASAN MARTINO

No. 26

(Filed 3 June 1980)

1. **Limitation of Actions § 7— accrual of cause of action—questions of fact—summary judgment improper**

    Where a question of fact existed as to when a breach of an agreement occurred and the statute of limitations began to run, summary judgment on the basis of the statute of limitations was inappropriate.

2. **Corporations § 4.1; Trusts § 13.1— agreement to repay loan from sale of stock—corporation not signatory to agreement—corporation bound by action of all shareholders**

    Defendants' contention that they had no fiduciary duty as directors of a corporation to apply funds received by the corporation for the sale of stock in accordance with an agreement between defendants which earmarked a portion of the proceeds for plaintiff because the corporation itself did not sign the agreement and therefore was not bound by the agreement was without merit, since, under some circumstances the action of *all* the shareholders of a close corporation binds the corporation even if the corporation is considered to be a legal entity separate from the shareholders; therefore, the lower court erred in dismissing plaintiff's complaint for breach of trust by defendants as directors of the corporation where she alleged that at the time of the agreement in question, two of the defendants were the sole shareholders and were officers and directors of the corporation; pursuant to the terms of the agreement itself, four of the individual defendants became sole shareholders and directors; and under these circumstances, plaintiff could prove at trial that the corporation was bound by the agreement, notwithstanding that the corporation itself was not a signatory thereto.

3. **Corporations § 11— action by creditor—ratification by corporation**

    In an action by plaintiff to recover for breach of trust by defendants as directors of a corporation where plaintiff claimed under an agreement signed only by the individual defendants and not by the corporation, plaintiff's complaint against the individual defendants was nevertheless sufficient to state a claim, since the principle of ratification could apply to bind the corporation, and thus defendant directors, where a shareholders' agreement was executed; the corporation then issued 6000 shares of stock to two of the defendants for which it received $10,000; and the corporation thereby accepted the benefits of the agreement.

4. **Trusts § 13.1— agreement to repay loan from sale of stock by corporation—failure of directors to repay—breach of trust—sufficiency of complaint**

    Plaintiff's complaint was sufficient to state a claim for breach of trust by defendants as directors of a corporation where plaintiff alleged that, pursuant

to a shareholders' agreement, the corporation was bound to earmark for plaintiff the sum of $5400, a part of the $10,000 proceeds derived from the issuance of 6000 shares of the corporation's stock, since the language of the shareholders' agreement was not, on its face, insufficient in law to establish a trust for plaintiff's benefit.

5. **Corporations § 4; Trusts § 13.1— money held by corporation as trustee—reliance on trust fund doctrine—sufficiency of complaint**

If plaintiff could prove that a corporation held $5400 as trustee under a special trust for her benefit, she then could rely on the "trust fund doctrine"—which means, in a sense, that the assets of a corporation are regarded as a trust fund, and the officers and directors occupy a fiduciary position in respect to stockholders and creditors, which charges them with the preservation and proper distribution of those assets—to show a breach of defendant directors' fiduciary duty, and the lower court erred in dismissing her complaint.

6. **Corporations § 13; Rules of Civil Procedure § 19— action against directors of corporation—injury personal to plaintiff—joinder of corporation as plaintiff unnecessary**

In an action to recover for breach of trust by defendants as directors of a corporation, the corporation was not a necessary party plaintiff, since plaintiff, in claiming that a portion of proceeds from sale of stock had been earmarked to repay her for a loan to the corporation, claimed an injury peculiar or personal to herself and did not claim injury to the corporation.

7. **Contracts § 25— implied contract—sufficiency of complaint**

Plaintiff's complaint was sufficient to state a claim on an implied contract between herself and defendants where the pleadings did not show an express agreement between plaintiff and defendants; the only agreement alleged was between defendants; it was the provisions of that agreement designed for plaintiff's benefit that could constitute, at least by implication, an offer to plaintiff; and by forbearing to collect her claims against the corporation of which defendants were directors or resigning from the board, or both, plaintiff, again by implication, accepted the offer and furnished consideration for the resulting agreement.

8. **Contracts § 14.1— contract for benefit of third party—complaint sufficient to state claim**

Plaintiff's complaint was sufficient to state a claim to recover as a third party beneficiary under an implied contract between defendant signatories to a shareholders' agreement and the corporation where plaintiff alleged that she was a creditor of the corporation; the signatories to the agreement were alleged to be the beneficial owners of the corporation with full power to control it; plaintiff could thus prove that the signatories promised each other and, by implication, the corporation itself, that if the corporation would issue 6000 shares of its stock, it would receive $10,000 capital; the agreement was tantamount to a promise by the signatories to cause the corporation to issue the stock, to receive the capital, and to pay plaintiff, among other creditors, out of the proceeds; the signatories caused the corporation to issue its stock and accept the capital, but they failed to cause it to pay plaintiff; and for this breach,

plaintiff could be entitled to recover as a direct, intended, creditor beneficiary of the implied promise of the signatories to the debtor corporation.

ON certiorari to the Court of Appeals, opinion by *Judge Clark*, with *Judges Vaughn* and *Hedrick* concurring, reported at 40 N.C. App. 348, 253 S.E. 2d 10 (1979). The Court of Appeals affirmed dismissal of the complaint by Judge Rouse presiding at the 28 November 1977 Session of NEW HANOVER Superior Court. We allowed plaintiff's petition for writ of certiorari on 25 September 1979 pursuant to App. R. 21.

*Franklin L. Block, Attorney for plaintiff-appellant.*

*Freeman, Edwards and Vinson, by George K. Freeman, Jr., Attorneys for defendant appellee George K. Freeman, Jr.*

*Rountree & Newton, by J. Harold Seagle and George Rountree III, Attorneys for defendant-appellees John Colucci, Jr., John Colucci III, and Aeronautics, Inc.*

EXUM, Justice.

This is an action against the shareholders, officers and directors of General Aviation, Inc., in their individual capacities for breach of an agreement to which only they, individually, are signatories. That part of the agreement relied on provides for the earmarking for the benefit of plaintiff as creditor of the corporation some of the proceeds of the sale of capital stock of General Aviation pursuant to other provisions in the agreement. The question presented is whether defendants can be liable to plaintiff in their individual capacities when the funds so earmarked for the plaintiff's benefit have not been paid to her but have, apparently, been used for other corporate purposes. The Court of Appeals concluded that they could not and, therefore, the complaint failed to state a claim upon which relief could be granted. We disagree and reverse.

Plaintiff alleges in substance as follows: Before 3 February 1967 she was an employee of General Aviation and had loaned it $4,602.50. On 3 February 1967, therefore, General Aviation was indebted to her for this amount plus interest. The corporation also owed her $800.00 plus interest for back salary earned. Defendants Freeman and Croom were at these times officers, directors, and sole shareholders of the corporation. On 3 February

1967, Freeman and Croom contracted in writing with defendants Colucci that the latter would pay General Aviation the sum of $10,000 for a 50 percent interest in the corporation to be evidenced by the issuance of 6000 shares of its stock. Plaintiff attaches this written agreement to the complaint and incorporates it therein. General Aviation is not a signatory to the agreement and there is nothing on the face thereof which indicates that the individual signatories are acting for the corporation. Section 3(b) of the agreement provides that upon its consummation plaintiff "shall resign from the Board of Directors of General Aviation and [defendants Freeman and Croom] shall elect to the board to fill her vacancy Mr. John Colucci III or his designee." Section 3(c) provides:

> "Out of monies coming in to the corporation from the sale of 6,000 shares of stock to the parties of the second part or their designee, the corporation shall pay salaries accrued to Mrs. Snyder in the amount of approximate [sic] $800.00, a note payable for equipment (a Pepsi-Cola drink machine) in the amount of approximately $150.20, the following notes payable to Mrs. Anne T. Freeman in the amount of $1,286.86 plus interest and to Mrs. Phyllis Snyder in the amount of $4,602.50 plus interest; accrued Federal Taxes in the amount of $2,742.06 (It is understood that George K. Freeman, Jr., has already paid said Federal Taxes in said amount and that the check will be made to reimburse him); and the balance of such monies to be paid against outstanding accounts payable as revealed by an audit of the company dated November 30, 1966, done and prepared by Norborne G. Smith, Jr., Certified Public Accountant of Goldsboro, North Carolina."

Plaintiff further alleges: after the execution of the agreement and pursuant thereto the Coluccis paid $10,000 to General Aviation, received 6000 shares of its stock, and "became officers and/or directors of the corporation." Defendants, however, have "failed to pay the plaintiff the funds owing her" in accordance with the agreement. Rather defendants "injustifiably dissipated said funds for other purposes." Plaintiff withheld making prior formal demand for payment because she feared she would lose her job if she did so. On 30 June 1975 General Aviation ceased doing business and was from that date "defunked [sic] and without

assets." Subsequently plaintiff unsuccessfully demanded payment of the corporate and individual defendants.

The complaint, filed on 2 February 1977, seeks damages of $5,402.50 plus interest against defendants individually, jointly and severally. General Aviation was not made a party to the action. All defendants except Croom answered. Two defenses asserted are failure of the complaint to state a claim upon which relief can be granted and the three year statute of limitations. Judge Rouse, on 28 November 1977, after hearing, ordered that the complaint be dismissed "for failing to state a cause of action against the Defendants and in the alternative, if a cause of action is stated, that the same is barred by the statute of limitations." The Court of Appeals affirmed the dismissal for failure to state a claim but vacated that part of the order grounded on the statute of limitations.

[1] We agree with the Court of Appeals' conclusion that Judge Rouse's dismissal on the ground of the statute of limitations was, in effect, the entry of summary judgment inasmuch as matters outside the pleadings must have been considered by him. *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). Although the three year statute of limitations is applicable, there is, as the Court of Appeals noted, "a question of fact remaining as to when the breach occurred and the statute of limitations began to run." 40 N.C. App. at 353, 253 S.E. 2d at 13. Summary judgment on the basis of the statute of limitations is, therefore, not appropriate. We also agree that no claim has been stated against defendant Aeronautics, Inc.[1] We disagree, however, with the Court of Appeals' determination that the complaint was properly dismissed for failure to state a claim under Rule 12(b)(6) as to defendants Colucci, Freeman, and Croom.

"'A [complaint] may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or a fact suffi-

---

1. Plaintiff, after Judge Rouse's ruling, took a voluntary dismissal as to defendants Pridgen and Martino. The complaint alleges that in 1974 these defendants purchased 75 percent of General Aviation's stock from the Coluccis and Freeman and that, in turn, in 1975, this stock was transferred to Aeronautics, Inc. Plaintiff does not allege that either Pridgen, Martino, or Aeronautics, Inc., were parties to the 1967 agreement nor does the agreement itself, attached to the complaint, show them to have been.

cient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim,' But a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." Sutton v. Duke,* 277 N.C. 94, 1020-3, 176 S.E. 2d 161, 166 (1970), *quoting* Moore, Federal Practice, § 12.08 (1968). (Emphasis original.) "The function of a motion to dismiss is to test the law of a claim, not the facts which support it." *White v. White,* 296 N.C. 661, 667, 252 S.E. 2d 698, 702 (1979).

The question is, then, whether under any set of facts which plaintiff may be able to prove relevant to the agreement on which she relies, there is some legal theory available by which she can establish liability against defendants Coluccis, Croom, and Freeman in their individual capacities. We think there are at least three such theories: (1) breach of trust by defendants as directors of General Aviation; (2) breach of an implied contract between defendants as shareholders of General Aviation and plaintiff; and (3) breach of an implied contract by defendants as shareholders of General Aviation and the corporation to which plaintiff is a third-party beneficiary.

### Breach of Directors' Fiduciary Duty

The breach of directors' fiduciary duty theory rests on these propositions: (1) the shareholders' agreement relied on bound General Aviation, as a corporation, to its terms, one of which was to earmark a portion of the $10,000 stock sale proceeds for plaintiff's benefit; (2) the individual defendants as directors of the corporation had a fiduciary duty to plaintiff to see that these corporate funds were so earmarked and duly paid to her; (3) by failing to so earmark these funds and applying them to other purposes, albeit for proper corporate purposes, these defendants breached this fiduciary duty. The Court of Appeals rejected this theory; it concluded that the first proposition on which the theory rests was invalid since, as a matter of law, the corporation could not be bound by the shareholders' agreement. The Court of Appeals said, "[I]n order for a trust to be created in the capital obtained from issuing stock, the corporation itself must agree to hold the capital in trust for creditors." 40 N.C. App. at 351, 253 S.E. 2d at 12. Defendants argue to us that since the corporation

itself did not sign the agreement, the agreement cannot bind the corporation. Therefore they, as directors of the corporation, had no fiduciary duty to apply the funds in accordance with the agreement. Indeed defendants argue boldly to this Court that the agreement insofar as it requires the funds to be earmarked for plaintiff is illusory, binding neither them nor the corporation to its terms; therefore, plaintiff cannot enforce it.

[2]   Plaintiff, however, alleges that at the time of the agreement, Freeman and Croom were the sole shareholders and were officers and directors of the corporation. Pursuant to the terms of the agreement itself, the Coluccis, Freeman, and Croom became sole shareholders and directors. We think under these circumstances plaintiff may prove the corporation bound by the agreement, notwithstanding that the corporation itself was not a signatory thereto.

Under some circumstances, the action of *all* the shareholders of a close corporation bind the corporation even if the corporation is considered to be a legal entity separate from the shareholders. A corporation is ordinarily bound by acts of its shareholders and directors "only when they act as a body in regular session or under authority conferred at a duly constituted meeting." *Park Terrace, Inc. v. Phoenix Indemnity Co.*, 241 N.C. 473, 478, 85 S.E. 2d 677, 680 (1955), *on rehearing*, 243 N.C. 595, 91 S.E. 2d 584 (1956). Nevertheless, " '[t]he contracts of the sole shareholder, or all the shareholders, will bind the corporation in modern law, although not made by the authority of the board of directors, since they are the only persons beneficially interested, aside from corporate creditors. If they do not distinguish between corporate business and their individual affairs, or waive formalities established for their benefit, there is no reason why the courts should insist on such formalities. The contract of the owners of all shares will be regarded as binding on the corporation if so intended.' "[2] *Philadelphia Life Insurance Co. v. Crosland-Cullen Co.*,

_____

2. Some indication that Croom, Freeman and the Coluccis intended General Aviation to be bound by the Agreement is found in those terms of the agreement which require General Aviation to issue 6,000 shares of its stock to the Coluccis, or their designee. This provision provides: "As soon as the parties of the second part [Coluccis] shall pay into the Treasurer of General Aviation, Inc. the sum of Ten Thousand Dollars ($10,000.00) and said Treasurer or the appropriate officers shall issue 6,000 shares of stock to the parties of the second part or their designee, then and upon such event, the parties hereto agree as follows:"

Snyder v. Freeman

234 F. 2d 780, 783 (4th Cir. 1956), *quoting* Ballentine on Corporations § 126, p. 296.[3] *See also Wall v. Colvard, Inc.,* 268 N.C. 43, 149 S.E. 2d 559 (1966); 18 Am. Jur. 2d, Corporations § 485 (1965). *See generally* Latty, "A Conceptualistic Tangle and the One- or Two-Man Corporation," 34 N.C. L. Rev. 471 (1956).

In *Brewer v. First Natinal Bank of Danville,* 202 Va. 807, 120 S.E. 2d 273 (1961), plaintiff's action against a corporation was based on a shareholder's agreement to pay plaintiff $40 per week for life. The corporation was a family business, all the shares of which were originally owned by plaintiff. The agreement in question was executed between plaintiff and members of her family as a part of a transaction for the sale of plaintiff's stock to the family members. The agreement was signed by plaintiff and by each subsequent shareholder. Payment was made by the corporation pursuant to the agreement from 1955 to 1959. The Virginia Supreme Court held: Ordinarily a corporation is bound only by actions taken at a duly constituted meeting of the board of directors. Where, however, shareholders, officers, and directors of a family or close corporation ignore such formalities and conduct business informally, such actions are nonetheless binding on the corporation. The agreement called for the corporation to make the payments to plaintiff; it was bound to do so.

---

3. The Fourth Circuit relied on the citation of this section of Ballentine in the second *Park Terrace* case. One basis for the holding in *Park Terrace* was that when one person acquires all the stock of a corporation, the corporation as a separate entity "becomes dormant or inactive," 243 N.C. at 597, 91 S.E. 2d at 586; in effect the corporation as a legal entity merges with its sole shareholder. This much of *Park Terrace's* rationale was overruled by the enactment of G.S. 55-3.1 which "provides among other things that fewer than three persons may acquire all the capital stock of a corporation without impairing its capacity to act as a corporation." *Lester Brothers v. Pope Realty & Insurance Co.,* 250 N.C. 565, 567, 109 S.E. 2d 263, 266 (1959). The validity of other principles enunciated in *Park Terrace,* however, was not affected by the legislative enactment. We believe this principle of law from Ballentine, quoted with approval by the Fourth Circuit, is sound and unaffected by the legislation referred to. The principle seems to have been adopted in the better reasoned cases from other jurisdictions. *Nordin v. Kaldenbaugh,* 7 Ariz. App. 9, 435 P. 2d 740 (1967); *Merlino v. West Coast Macaroni Mfg. Co.,* 90 Cal. App. 2d 106, 202 P. 2d 748 (1949); *Moss v. Waytz,* 4 Ill. App. 2d 296, 124 N.E. 2d 91 (1955); *Petruzzi v. Peducka Construction Co.,* 362 Mass. 190, 285 N.E. 2d 101 (1972); *Elyea v. Lehigh Salt Min. Co.,* 169 N.Y. 29, 61 N.E. 992 (1901); *Brewer v. First National Bank of Danville, supra,* 202 Va. 807, 120 S.E. 2d 273 (1961) (discussed in text). *But see Bator v. United Sausage Co.,* 138 Conn. 18, 81 A. 2d 442 (1951); *Broyles v. Johnson,* 99 Ga. App. 69, 107 S.E. 2d 851 (1959); *Weber v. Sidney,* 19 App. Div. 494, 244 N.Y.S. 2d 228 (1963), *aff'd* 14 N.Y. 2d 929, 252 N.Y.S. 2d 327, 200 N.E. 2d 867 (1964).

The policy of this state as declared in its Business Corporation Act is to permit the shareholders in a close corporation to bind the corporation under appropriate circumstances. Subsections (b) and (c) of G.S. 55-73 provide, in part, as follows:

"(b) Except in cases where the shares of the corporation are at the time or subsequently become generally traded in the markets . . . no written agreement to which all of the shareholders have actually assented . . . and which relates to any phase of the affairs of the corporation, whether to the management of its business or division of its profits or otherwise, shall be invalid as between the parties thereto, on the ground that it is an attempt by the parties thereto to treat the corporation as if it were a partnership or to arrange their relationships in a manner that would be appropriate only between partners. . . .

(c) An agreement between all or less than all of the shareholders, whether solely between themselves or between one or more of them and a party who is not a shareholder, is not invalid, as between the parties thereto, on the ground that it so relates to the conduct of the affairs of the corporation as to interfere with the discretion of the board of directors, *but the making of such an agreement shall impose upon the shareholders who are parties thereto the liability for managerial acts that is imposed by this Chapter upon directors*." (Emphasis supplied.)

These provisions are designed to permit the management of close corporations by shareholders thereof who act by other than normal corporate procedures. Such actions by the shareholders, if so intended, must perforce bind the corporation. The shareholders who participate therein have the same "liability for managerial acts that is imposed . . . upon directors." G.S. 55-73(c). *See generally* Latty, "The Close Corporation and the New North Carolina Business Corporation Act." 34 N.C. L. Rev. 432 (1956).

[3] The corporation may likewise be bound by this agreement under a principle of agency law: ratification. The facts alleged which may trigger its application are: After execution of the shareholders' agreement, General Aviation itself issued 6,000 shares of stock to the Coluccis for which it received $10,000. By accepting the benefits of the agreement, the corporation might

have made the agreement its own and become bound by it even if initially the agreement would not have bound the corporation.

"The binding effect of an agent's acts does not, however, necessarily depend upon the existence of authority in the agent at the time the act was done. It is fundamental that acts performed by an agent beyond the scope of his authority, and even acts performed by one who in point of fact is not an agent, but who assumes to act as an agent, may, if they could lawfully have been delegated, be ratified by the principal or by one in whose behalf they are assumed to be done. As applied to the law of agency, ratification is the affirmance by a person of a prior act which did not bind him, but which was done or professed to be done on his account, whereby the act is given effect as to some or all persons, as if originally authorized." *Jones v. Bank of Chapel Hill,* 214 N.C. 794, 798, 1 S.E. 2d 135, 137 (1939).

"The jury may find ratification from any course of conduct on the part of the principal which reasonably tends to show an intention on his part to ratify the agent's unauthorized acts. 3 *Am. Jur.* 2d, Agency § 162. 'It is what a party does, and not what he may actually intend, that fixes or ascertains his rights under the law. He cannot do one thing and intend another and very different and inconsistent thing. The law will presume that he intended the legal consequences of what he does, or, in other words, that his intention accords in all respects with the nature of his acts.'" *Carolina Equipment & Parts Co. v. Anders,* 265 N.C. 393, 401, 144 S.E. 2d 252, 258 (1965).

" 'The defendant will not be permitted to repudiate the act of its agent as being beyond the scope of his authority, and at the same time accept the benefits arising from what he has done while acting in its behalf. [Citation omitted.] It is a rule too well established to admit of debate that if a principal, with full knowledge of the material facts, takes and retains the benefits of an unauthorized act of his agent, he thereby ratifies such act, and with the benefits he must necessarily accept the burdens incident thereto or which naturally result therefrom. The substance of ratification is confirmation after conduct. [Citation omitted.] It is also a settled principle of ratification that the principal must ratify the whole of his agent's unauthorized act or not at all. He cannot accept its benefits and repudiate its burdens.'" *Maxwell v.*

*Proctor & Gamble Distributing Co.,* 204 N.C. 309, 318, 168 S.E. 403, 407 (1933). *See also Brinson v. Mill Supply Co.,* 219 N.C. 505, 14 S.E. 2d 509 (1941); *Morris v. Basnight,* 179 N.C. 298, 102 S.E. 389 (1920); *Anderson v. American Suburban Corp.,* 155 N.C. 131, 71 S.E. 221 (1911).

The Court of Appeals concluded that none of the signatories to the agreement even "purported to act for the corporation . . . ." 40 N.C. App. at 351-52, 253 S.E. 2d at 12. We believe plaintiff might be able to prove otherwise. First, G.S. 55-73, discussed above, permits the shareholders of a close corporation to conduct the business of the corporation. Second, the agreement itself requires the corporation to issue 6,000 shares of its stock for which it was to receive $10,000. Inasmuch as the agreement requires corporate action, plaintiff might prove that its signatories in executing it were purporting to act for the corporation whose action was to be required. The corporation, by accepting the benefits of the transaction intended to and did, in fact, ratify the agreement. It thereby became bound by the agreement.

[4] If, then, plaintiff can prove General Aviation bound by the shareholders' agreement, she may also prove it was bound to earmark, or hold in special trust, for her the sum of $5,402.50, a part of the $10,000 proceeds derived from the issuance of 6,000 shares of General Aviation's stock. Defendants argue: (1) the language of the agreement is insufficient to establish a trust, (2) there was no intent to establish a trust, and (3) a corporation cannot legally establish such a trust because it amounts to a preference of one general creditor over another.

We believe the language of the agreement is not, on its face, insufficient in law to establish a trust for plaintiff's benefit. "[N]o particular words are necessary to create a trust if the purpose to create is evident." *YWCA of Asheville v. Morgan,* 281 N.C. 485, 490, 189 S.E. 2d 169, 172 (1972). "If it appears that the intention is that the property be held or dealt with for the benefit of another, a court of equity will affix to it the character of trust." *Stephens v. Clark,* 211 N.C. 84, 88, 189 S.E. 191, 194 (1937). Whether a trust was created depends on the parties' intent, but that intent is to be ascertained primarily from the language of the written document itself in light of surrounding facts and circumstances. *Citizens National Bank v. Home for Children,* 280 N.C. 354, 185

S.E. 2d 836 (1972); *Campbell v. Jordan,* 274 N.C. 233, 162 S.E. 2d 545 (1968); *McCain v. Womble,* 265 N.C. 640, 144 S.E. 2d 857 (1965); *In re Will of Wilson,* 260 N.C. 482, 133 S.E. 2d 189 (1963). A party to a contract may not, by asserting that he did not mean what he said, obtain an interpretation contrary to the express language of the contract. *Fidelity & Casualty Co. of N.Y. v. Nello L. Teer Co.,* 250 N.C. 547, 109 S.E. 2d 171 (1959). That this language is contained in a shareholders' agreement does not change the rules of construction. As stated in *Blount v. Taft,* 295 N.C. 472, 484, 246 S.E. 2d 763, 771 (1978):

> "Since consensual arrangements among shareholders are *agreements*—the products of negotiation—they should be construed and enforced like any other contract so as to give effect to the intent of the parties as expressed in their agreements, unless they 'violate the express charter or statutory provision, contemplate an illegal object, involve . . . fraud, oppression or wrong against other stockholders, or are made in consideration of a private benefit to the promisor.' "

Defendants rely on this language from *Wilson v. Crab Orchard Development Co.,* 276 N.C. 198, 209, 171 S.E. 2d 873, 881 (1970):

> "There is, however, at least, serious doubt that a corporation may make a valid contract to hold in trust for specified persons, or a specified group of persons, to whom it is not otherwise obligated, the capital it receives in exchange for its issuance of its own stock, so as to defeat the rights of its own creditors and of transferees of such stock therein."

Plaintiff, however, was one to whom General Aviation was otherwise obligated. Plaintiff may prove, further, that no rights of other creditors would have been defeated by General Aviation's compliance with the agreement. *See Wall v. Colvard, supra,* 268 N.C. 43, 49, 149 S.E. 2d 559, 564, where the Court noted:

> "In a number of jurisdictions 'the sole stockholder or the stockholders by unanimous action may do as they choose with the corporation's assets provided the interest of its creditors are not affected.' 18 Am. Jur. 2d, Corporations § 487 (1965) and cases therein cited. So far as the record

discloses, except for the conditional vendors of the cash register and truck, plaintiff was the corporation's only creditor at the time the mortgage in suit was given."

Whether any preference to plaintiff, moreover, was such as to defeat the rights of other creditors may depend on General Aviation's solvency at the time of the agreement's consummation. G.S. 23-1, *et seq.; Flowers v. American Agricultural Chemical Company*, 199 N.C. 456, 154 S.E. 736 (1930); *see also Commissioner of Banks v. Turnage*, 202 N.C. 485, 163 S.E. 451 (1932); *Cowan v. Dale*, 189 N.C. 684, 128 S.E. 155 (1925).

**[5]**  If plaintiff can thus prove that General Aviation held $5,402.50 as trustee under a special trust for her benefit, she may then rely finally on the last of the three propositions to show a breach of directors' fiduciary duty. "Directors of a corporation are trustees of property of the corporation for the benefit of the corporate creditors as well as shareholders. It is their duty to administer the trust . . . for the mutual benefit of all parties interested . . . ." *Pender v. Speight*, 159 N.C. 612, 615, 75 S.E. 851, 852 (1912); *see also Anthony v. Jeffress*, 172 N.C. 378, 90 S.E. 414 (1916). "North Carolina adheres to the 'trust fund doctrine,' which means, in a sense, that the assets of a corporation are regarded as a trust fund, and the officers and directors occupy a fiduciary position in respect to stockholders and creditors, which charges them with the preservation and proper distribution of those assets." *Underwood v. Stafford*, 270 N.C. 700, 702, 155 S.E. 2d 211, 212 (1967). "And directors are liable for the misapplication of funds held in trust by the corporation, where they knew or ought to have known thereof. . . . Directors who mingle money collected for another with the funds of the corporation, in violation of the instruction of the owner, or who knowingly permit their subordinates to do so, whereby the fund is lost, are personally liable therefor." *Minnis v. Sharpe*, 198 N.C. 364, 367, 151 S.E. 735, 737 (1930).

**[6]**  Neither is the corporation a necessary party plaintiff because of the holding in *Underwood v. Stafford, supra.* There the action was by a corporate creditor against four individuals who were officers, directors and shareholders of the corporate debtor. The complaint alleged defendants had defrauded corporate creditors by appropriating to themselves corporate assets. This Court held that since the allegations claimed wrongs against the corporation

itself, it was the duty of the corporation, primarily, to enforce defendants' obligations; therefore, the corporation was a necessary party plaintiff. The Court noted, however, 270 N.C. at 703, 155 S.E. 2d at 213:

> "If the cause of action were founded on injuries peculiar or personal to plaintiff himself, so that any recovery would not pass to the corporation and indirectly to other creditors, the cause of action could have been properly asserted by plaintiff; however, where the alleged breach or injuries are based on duties owed to the corporation and not to any particular creditor or stockholder, the creditor or stockholder cannot maintain the action without a demand on the corporation, or its receiver if insolvent, to bring the suit and a refusal to do so, and a joinder of the corporation as a party."

Plaintiff here claims injury "peculiar or personal" to herself. She does not claim injury to the corporation. Apparently all proceeds of the $10,000 stock issue were used for legitimate corporate purposes. Plaintiff claims only a violation by the directors of the special trust for her benefit upon which she alleges a portion of these funds were held.

## Implied Contract

[7]  Plaintiff may be able to prove a contract, implied in fact, between her and defendant shareholders who were signatories to the shareholders' agreement.

> "A 'contract implied in fact,' . . . arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract." 17 C.J.S., *Contracts* § 4(b) (1963). An implied contract is valid and enforceable as if it were express or written. "[A]part from the mode of proving the fact of mutual assent, there is no difference at all in legal effect between express and contracts implied in fact." Simpson, Contracts, § 5 (2d ed. 1965). Whether mutual assent is established and whether a contract was intended between parties are questions for the trier of fact. *Storey v. Stokes*, 178 N.C. 409, 100 S.E. 689 (1919); *Devries v. Haywood*, 64 N.C. 83 (1870).

The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds. *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 161 S.E. 2d 453 (1968). This mutual assent and the effectuation of the parties' intent is normally accomplished through the mechanism of offer and acceptance. "In the formation of a contract an offer and acceptance are essential elements." *Yeager v. Dobbins*, 252 N.C. 824, 828, 114 S.E. 2d 820, 823 (1960). With regard to a contract implied in fact, one looks not to some express agreement, but to the actions of the parties showing an implied offer and acceptance.

In this case the plaintiff may prove that the shareholders' agreement itself constituted this offer to her: if she would forbear collecting her claims against the corporation, or resign from the board, or do both, defendants would cause the corporation to earmark a portion of the $10,000 proceeds for her benefit and to pay her out of these proceeds. By her forbearance and resignation, plaintiff may show she accepted the offer. Acceptance by conduct is a valid acceptance. *Durant v. Powell*, 215 N.C. 628, 2 S.E. 2d 884 (1939); *Woodman v. Millikan*, 126 Kan. 640, 270 P. 584 (1928) (forbearance by plaintiff creditor; held, acceptance of offer to pay if original debtor did not pay). Plaintiff's forbearance or resignation may constitute not only an acceptance of the offer, but also, sufficient consideration to support the contract. Forbearance in the exercise of a legal right is sufficient consideration. *Myers v. Allsbrook*, 229 N.C. 786, 51 S.E. 2d 629 (1949).

We are not inadvertent to the principle that where there is an express contract between parites, there can be no implied contract between them covering the same subject matter dealt with in the express agreement. *Vetco Concrete Company v. Troy Lumber Co.*, 256 N.C. 709, 124 S.E. 2d 905 (1962). In this case, plaintiff had furnished materials for the building of various houses under an express agreement with Fore-Taylor Building Company (Fore-Taylor) that it would pay for the materials. Some of the houses were actually constructed on lots owned by defendant Troy Lumber Company (Troy Lumber). Plaintiff did not know which company owned the lots when it furnished the materials. When Fore-Taylor defaulted on its contractual obligations to pay plaintiff, plaintiff brought action against defendant on the theory of an implied contract that defendant would pay. This Court held that plaintiff should have been nonsuited for the reason that hav-

ing expressly agreed to look to Fore-Taylor for payment for materials furnished, plaintiff could not rely on any implied agreement between it and Troy Lumber. The Court said, *id.* at 713-14, 124 S.E. 2d at 908:

> "It is stated in 12 Am. Jur., Contracts, Section 7, page 505: 'There cannot be an express and an implied contract for the same thing existing at the same time. It is only when parties do not expressly agree that the law interposes and raises a promise. No agreement can be implied where there is an express one existing,' citing, among other cases, *Manufacturing Co. v. Andrews, supra,* and *McLean v. Keith, supra.* It is further stated in a footnote that, 'Perhaps it is more precise to state that where the parties have made a contract for themselves, covering the whole subject matter, no promise is implied by law.
>
> " 'The same rule has been applied to benefits conferred under a special contract with a third person. When there is a contract between two persons for the furnishing of services or goods to a third, the latter is not liable on an implied contract simply because he has received such services or goods. *Walker v. Brown,* 28 Ill. 378, 81 Am. Dec. 287; *Massachusetts General Hospital v. Fairbanks,* 129 Mass. 78, 37 Am. Rep. 303; *Sullivan v. Detroit, Y. & A.A. R. Co.,* 135 Mich. 661, 98 N.W. 756, 64 L.R.A. 673, 106 Am. St. Rep. 403.' "

These principles may not defeat plaintiff here from relying on an implied contract between herself and defendants because, as far as the pleadings show, plaintiff has not entered into any express agreement covering the matter in question. The only express agreement alleged is between defendants. It is those provisions of this very agreement designed for plaintiff's benefit that may constitute, at least by implication, an offer to plaintiff. By forbearing to collect her claims against the corporation or resigning from the board, or both, plaintiff, again by implication, accepted the offer and furnished consideration for the resulting agreement.

### Third-Party Beneficiary

[8] Plaintiff may prove she is entitled to recover as a third-party beneficiary of an implied contract between the signatories to the

shareholders' agreement and the corporation. The Court of Appeals rejected one version of this theory on the ground that the intent of the parties to the agreement was to benefit the corporation, not plaintiff, inasmuch as the corporation, not plaintiff, was to receive the proceeds of the stock issue. The Court of Appeals said, 40 N.C. App. at 352, 253 S.E. 2d at 13:

> "In the case *sub judice,* the parties intended to benefit the corporation by providing additional capital so that it could meet its obligation to its creditors. There was no provision in the contract whereby the defendants agreed to pay money directly to plaintiff; the defendants' agreement was to pay the money directly to the *corporation.* Nor is there any provision in the contract whereby the defendants agreed to become guarantors of the corporate debt; on the contrary, the terms of the agreement provided that the *corporation* would pay the creditors. Therefore, the plaintiff is not directly benefited by the contract and has no rights against the individual defendants pursuant to that contract. Plaintiff's sole cause of action was against the corporation on the original debt."

This conclusion fails to take full cognizance of the setting in which the agreement was executed, the law governing third-party beneficiaries and the law of implied contracts. As already noted, shareholders' agreements are construed like other contracts. *Blount v. Taft, supra,* 295 N.C. 472, 246 S.E. 2d 763; *Wilson v. McClenny,* 262 N.C. 121, 136 S.E. 2d 569 (1964). North Carolina recognizes the right of a third-party benficiary to sue for breach of a contract executed for his benefit. *Vogel v. Supply Co.,* 277 N.C. 119, 177 S.E. 2d 273 (1970); *American Trust Co. v. Catawba Sales & Processing Co.,* 242 N.C. 370, 88 S.E. 2d 233 (1955); *Boone v. Boone,* 217 N.C. 722, 9 S.E. 2d 383 (1940). Ordinarily " 'the determining factor as to the rights of a third-party beneficiary is the intention of the parties who actually made the contract. The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts.' 17 Am. Jur. 2d, *Contracts* § 304. It is not sufficient that the contract does benefit him if in fact it was not intended for his direct benefit." *Vogel v. Supply Co., supra,* 277 N.C. at 128, 177 S.E. 2d at 279.

In *Vogel*, though, this Court expressly adopted the analysis of the American Law Institute's Restatement of Contracts, § 133, in determining whether a beneficiary of an agreement made by others has a right of action on that agreement. This section, Restatement 2d, Contracts § 133 at 285-86 (1973), provides:

"§ 133. Intended and Incidental Benficiaries

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."

The commentary to § 133(a) reads, in part:

"b. *Promise to pay the promisee's debt.* The type of beneficiary covered by subsection (1)(a) is often referred to as a 'creditor beneficiary.' In such cases the promisee is surety for the promisor, the promise is an asset of the promisee, and a direct action by beneficiary against promisor is normally appropriate to carry out the intention of promisor and promisee, even though no intention is manifested to give the beneficiary the benefit of the promised performance."

Under this analysis, plaintiff's allegations are sufficient to permit her to prove that she is a creditor beneficiary of an implied contract between the signatories to the shareholders' agreement, as promisors, and the corporation, as promisee so that her right to enforce performance of this contract is "appropriate to effectuate the intention of the parties" under Section 133(1)(a) of the Restatement. Plaintiff alleges she is a creditor of General Aviation. The signatories to the agreement are alleged to be the beneficial owners of the corporation with full power to control it.

Plaintiff may thus prove: The signatories promised each other and, by implication, the corporation itself, that if the corporation would issue 6,000 shares of its stock, it would receive $10,000 capital. The agreement is tantamount to a promise by the signatories, *to cause the corporation* to issue the stock, to receive the capital, and to pay plaintiff, among other creditors, out of the proceeds. The corporation was both plaintiff's debtor and, by implication, promisee of the agreements designed to retire the debt. The signatories caused the corporation to issue its stock and accept the capital; but they failed to cause it to pay plaintiff. For this breach, plaintiff may be entitled to recover as a direct, intended, creditor beneficiary of the implied promise of the signatories to the debtor corporation. The result is like the first illustration of an intended, creditor beneficiary given in Restatement 2d, Contracts at 287:

> "A owes C a debt of $100. The debt is barred by the statute of limitations or by a discharge in bankruptcy, or is unenforceable because of the Statute of Frauds. B promises A to pay the barred or unenforceable debt. C is an intended beneficiary under Subsection (1)(a)."

Although the signatories here do not *themselves* promise to pay the corporation's debt, plaintiff may prove that they have indeed promised to cause the corporation over which they have full control to pay plaintiff out of the proceeds raised pursuant to the agreement, for the breach of which she is entitled to recover against them individually. Agreements by shareholders to vote their shares so as to cause their corporation to take certain action are generally enforceable against the shareholders. *Wilson v. McClenny, supra,* 262 N.C. 121, 136 S.E. 2d 569. "[W]here two or more persons agree that a corporation shall do a certain thing, which they can compel it to do, because they hold a majority of the stock, or otherwise, the corporation is not bound by their agreement,[4] but they bind themselves individually, unless it is ex-

---

4. This language does not affect our earlier discussion concerning a breach of directors' fiduciary duty where we stated that under certain circumstances, the shareholders of a close corporation acting to manage the corporation informally and intending to bind the corporation may be held to have bound it. In *Morse,* the Court was simply restating the *general* rule, that shareholders not authorized by the corporation to act for it, cannot bind the corporation. The Court in *Morse* had no occasion to consider whether an exception to that general rule might be applicable in that case.

pressly agreed that the other party is looking to the corporation, and not to [the persons controlling the corporation]." *Morse v. Tillotson & Wolcott Co.*, 253 F. 340, 351 (2d Cir. 1918).

## Conclusion

For the reasons given, we conclude the complaint does state a claim upon which relief may be granted. We have alluded to several legal theories which may be available to plaintiff. Much depends on the nature of the proof at trial. We have not attempted to provide a definitive analysis of any of the theories to which we have alluded or to say whether any or all of the theories will ultimately be applicable. Without full factual development, which is not provided by the pleadings, neither the definitive boundaries of the various theories nor their ultimate applicability can appropriately be determined.

The decision of the Court of Appeals is

Reversed.