An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-161

Filed 15 October 2025

Swain County, No. 23CVS000186-860

GEORGE SKOUTELIS and STEPHANIE EBERT GUZMAN, Plaintiffs,

v.

GREASY BRANCH WATER CORPORATION, Defendant.

Appeal by plaintiffs from order granting summary judgment entered 25 September 2024 by Judge Tessa S. Sellers in Swain County Superior Court. Heard in the Court of Appeals 9 September 2025.

> *Hedgepeth Law Group, PLLC, by Shira Hedgepeth, for plaintiff-appellants.*
>
> *Hyde Brown Wilson, P.A., by Mark A. Wilson, for defendant-appellee.*

ARROWOOD, Judge.

George Skoutelis and Stephanie Ebert Guzman ("plaintiffs") appeal from the trial court's order granting summary judgment to Greasy Branch Water Corporation ("Greasy Branch"). For the following reasons, we affirm the trial court's order.

## I. Background

Greasy Branch is a nonprofit corporation that exists "for the purpose of

operating a private water system that services numerous residences in Swain County." Greasy Branch is governed by a set of bylaws that were adopted on 7 December 1987 and last amended on 25 March 2015. As outlined in the bylaws, Greasy Branch operates on a membership basis where people pay an annual "tap fee" and become members of the corporation eligible to receive water. Membership is transferable to subsequent purchasers of residences already receiving water from Greasy Branch. Additionally, the bylaws contain restrictions on members' use of the water they receive. One such restriction is that members may not make commercial use of any tap, including "daily or weekly rentals other than full time renters or any use of water for profit."

On 28 July 2022, plaintiffs closed on residential property that was serviced by Greasy Branch. The prior owners of the property were members of Greasy Branch and Greasy Branch supplied the only source of water on the property. As part of the closing, plaintiffs paid a water fee to Greasy Branch to continue receiving water service. At that time, plaintiffs were aware that Greasy Branch supplied water to the residence but contend they were not aware of Greasy Branch's bylaws which were not publicly recorded.

Soon after purchasing the property, plaintiffs began using it as a second residence and listed the property for short-term rentals on Airbnb. On or about 28 April 2023, plaintiffs received a letter from Greasy Branch's Secretary-Treasurer, Mike Hyde, notifying them of the annual meeting for members of Greasy Branch.

Plaintiffs responded that they would be unable to attend but offered to call in to the meeting and, alternatively, asked for updates after the meeting.

On 30 May 2023, plaintiffs received a call from Mr. Hyde advising that plaintiffs were in violation of the bylaws by using the water for their short-term rentals and, as a result, Greasy Branch was going to discontinue plaintiffs' water access. That same day, Greasy Branch sent a follow-up letter containing the same information and additionally notifying plaintiffs that billing for their membership fee would be mailed to them on 1 July 2023. Plaintiffs objected and continued to rent the property on Airbnb. On 7 July 2023, plaintiffs sent a check for the member fee.

Plaintiffs filed an action on 15 August 2023, seeking declaratory judgment and a preliminary injunction against Greasy Branch disconnecting the water service. A temporary injunction against Greasy Branch disconnecting plaintiffs water service was ordered on 28 September 2023. A preliminary injunction to the same effect was ordered on 23 February 2024. In August 2024, both parties filed motions for summary judgment. A hearing on the motions was held on 16 September 2024 and Judge Sellers granted Greasy Branch's motion for summary judgment on 25 September 2024. Plaintiffs gave notice of appeal on 25 October 2024.

## II.    Discussion

On appeal, plaintiffs contend that the trial court erred in denying plaintiffs' motion for summary judgment and granting summary judgment in favor of Greasy Branch. Specifically, plaintiffs argue that 1) an implied contract, if any, was formed

between plaintiffs and Greasy Branch on 28 July 2022 and did not include the terms set out in Greasy Branch's bylaws, 2) the contract was never modified to include the bylaws, 3) enforcing the bylaws would amount to an unconscionable contract of adhesion, and 4) allowing Greasy Branch to restrict the use of land through its bylaws is against public policy. We address each argument in turn.

### A. Standard of Review

"Our standard of review from an order granting summary judgment is *de novo.*" *Bryan v. Kittinger*, 282 N.C. App. 435, 437 (2022) (citing *Forbis v. Neal*, 361 N.C. 519, 524 (2007)). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2025).

### B. Implied Contract

"[A] contract implied in fact arises where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts. Such an implied contract is as valid and enforceable as an express contract." *Creech v. Melnik*, 347 N.C. 520, 526–27 (1998) (citations omitted). "The essence of any contract is the mutual assent of both parties to the terms of the agreement . . . ." *Snyder v. Freeman*, 300 N.C. 204, 217–18 (1980). When determining whether mutual assent exists in a contract implied by fact, "one looks

not to some express agreement, but to the actions of the parties showing an implied offer and acceptance." *Id.* at 218. This Court has found a contract implied in fact where one party knowingly accepts a benefit conferred upon them by another party. *See Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enters., LLC*, 226 N.C. App. 483, 489–90 (2013) (finding an implied contract between a property owner making use of private roads and the community association that maintained the roads).

Here, the undisputed facts demonstrate that plaintiffs and Greasy Branch formed a contract implied in fact that included plaintiffs' membership in Greasy Branch and, by extension, Greasy Branch's bylaws including the prohibition on using water for short-term rentals. When plaintiffs paid the water fee during the closing process on their property, they demonstrated a willingness to contract with Greasy Branch, which was reciprocated when Greasy Branch accepted the payment. At that time, Greasy Branch had already adopted its bylaws with the restriction on the use of water for short-term rentals. By paying for water services through Greasy Branch, plaintiffs impliedly accepted the already existing terms of that service.

Plaintiffs argue that because they had no knowledge of the restrictions on water use for short-term rentals and Greasy Branch's bylaws are not recorded, the restrictions were not terms of their contract with Greasy Branch. Additionally, plaintiffs argue that their use of the property for short-term rentals demonstrates that they did not assent to Greasy Branch's bylaws. However, as internal governing documents, Greasy Branch's bylaws were not required to be recorded in the deeds of

the properties Greasy Branch services or otherwise of public record. *See* N.C.G.S. § 55-16-01 (requiring only that a corporation maintain records of its bylaws and make it available for inspection). Moreover, it was plaintiffs' duty to investigate the terms of the service and restrictions on the property before closing on the property and paying the water dues. *See Hearne v. Statesville Lodge No. 687*, 143 N.C. App. 560, 562 (2001) ("Before purchasing property, it is incumbent upon buyers to take reasonable steps to protect their own interest.").

Additionally, plaintiffs demonstrated knowledge of their membership in Greasy Branch when they attempted to attend the annual membership meeting. Enforcing the benefits of membership in Greasy Branch without also enforcing the restrictions merely because plaintiffs did not investigate the terms of the service would effectively allow plaintiffs to unilaterally pick and choose the contract terms after its formation. Therefore, the contract between plaintiffs and Greasy Branch included both the plaintiffs' membership in Greasy Branch and the terms of Greasy Branch's bylaws.

Even assuming, *arguendo*, that plaintiffs had not assented to Greasy Branch's bylaws before being notified of their violation, plaintiffs later assented by paying the member dues on 7 July 2023. When they paid those dues, plaintiffs had full knowledge of Greasy Branch's bylaws including the restriction on short-term rentals. That plaintiffs joined as members of Greasy Branch and continued to use the property for short-term rentals is not evidence of a lack of assent but rather evidence of a

contract violation.

### C.    Contract Modification

Plaintiffs argue that the bylaws' terms were proposed as a modification to their contract with Greasy Branch when Greasy Branch notified plaintiffs of the upcoming member dues and their breach of the bylaws on 30 May 2023.  Further, plaintiffs contend that the modification was not supported by mutual assent or consideration.  However, since we find that a contract implied in fact that included Greasy Branch's bylaws existed before 30 May 2023, no modification is needed to enforce the bylaws.

### D.    Adhesion Contract

Plaintiffs also argue that enforcing Greasy Branch's bylaws against them would amount to a contract of adhesion, which, in turn, should not be enforced because its terms would fall outside plaintiffs' reasonable expectations and would be unconscionable.  We disagree.

In contracts of adhesion, the adhering party had no realistic opportunity to bargain the terms of a contract and could not obtain the desired product or service except by entering the contract.  *See Joyner v. Adams*, 87 N.C. App. 570, 577 (1987); *Sears Roebuck & Co. v. Avery*, 163 N.C. App. 207, 215 (2004) (interpreting Arizona contract law).  Like all contracts, contracts of adhesion may be unenforceable on the ground of unconscionability.  *See King v. Bryant*, 369 N.C. 451, 459–60 (2017); *Brenner v. Little Red Sch. House, Ltd.*, 302 N.C. 207, 213 (1981).  A contract is unconscionable where "the inequality of the bargain is so manifest as to shock the

judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Brenner*, 302 N.C. at 213.

Here, plaintiffs allege that their contract with Greasy Branch is a contract of adhesion because they cannot drill a well, making Greasy Branch the only possible source of water for their residence. However, this ignores the power of choice the plaintiffs had in purchasing a residence serviced by Greasy Branch in the first place. Plaintiffs knew when they closed on their property that the water was provided by Greasy Branch. Though they did not take it, plaintiffs had the opportunity to investigate the terms of the water service and reject them. Thus, there was not an inequality of bargaining power sufficient to find a contract of adhesion nor unconscionability.

### E. Public Policy

Lastly, plaintiffs argue that Greasy Branch's prohibition of use of their services for short-term rentals is an unreasonable restraint on the use of the property and against public policy. In support of this argument, plaintiffs point to the unenforceability of transfer fee covenants. N.C.G.S. § 39A-1; *Broad St. Clinic Found. v. Weeks*, 273 N.C. App. 1, 6–8 (2020). However, Greasy Branch's bylaws constitute only a restriction on the use of water they provide, not the use of the property as a whole. While the availability of utilities can certainly impact the use of a property, Greasy Branch's restriction on the utility it provides does not rise to the level of

restraint on alienation as transfer fees. Thus, we do not find that Greasy Branch's bylaws are unenforceable as against public policy.

### III.    Conclusion

For the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of Greasy Branch.

AFFIRMED.

Judges STROUD and STADING concur.

Report per Rule 30(e).